RECEIVED
JUN 3 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SABER KHEIRALLA     CIVIL ACTION NO. 05-1187

versus     JUDGE HICKS

COMMISSIONER OF THE SOCIAL     **REFERRED TO:**
SECURITY ADMINISTRATION     **MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

**Introduction**

Saber Kheiralla ("Plaintiff") was awarded disability benefits in October 1989. He later completed medical school, worked during a residency and eventually became employed as a physician at the VA Medical Center. Plaintiff had earnings during his residency that amounted to substantial gainful activity and should have resulted in the termination of his benefits, but the agency did not actually terminate payment until several months later. The agency determined that Plaintiff had been overpaid more than $25,000 and demanded a refund. Plaintiff appealed for a waiver that would allow him to keep the overpayment, but ALJ Raymond Gollmitzer held that a waiver of the overpayment was not in order because Plaintiff was not without fault in causing or accepting the overpayment.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial relief that is available pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28

U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision will be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis of the Overpayments and Waiver Issues**

Generally, a person is not entitled to disability benefits if he works in substantial gainful employment. However, a person who is receiving benefits is permitted a "trial work period" in which he can try out his ability to work while still receiving benefits. The trial work period ends after the ninth month in which the beneficiary has been working. After that, there is a three-year re-entitlement period or extended period of eligibility during which the beneficiary is not entitled to benefits during the months in which he works, but he is entitled to benefits (without having to file a new application) for those months in which he

does not work. After that period, payments are terminated completely if the person engages in substantial gainful activity. 20 C.F.R. §§ 404.1592 and 404.1592a; Wilkening v. Barnhart, 139 Fed. Appx. 715 (7th Cir. 2005).

The agency notified Plaintiff that his claim was scheduled for review in March 1996 because the ninth month of his trial work period would end at that time. Tr. 107. Plaintiff had earlier reported on a Work Activity Report that he was employed as a medical resident at the VA Medical Center in Wilkes-Barre, PA. Plaintiff noted on the form that his employment began July 1995 and continued, with an annual salary just under $30,000. Tr. 23-25.

The agency notified Plaintiff in June 1996 it had reviewed the record and found Plaintiff's disability was continuing. The agency did not check any of the boxes on the form to indicate that Plaintiff had been working. Rather, it checked a box to indicate the claim would be reviewed from time to time for continuing eligibility based on disability. Tr. 112.

The agency contacted Plaintiff in November 1997 and said it was checking to see if he could still receive benefits because he had earnings in 1996. Tr. 113. Plaintiff responded by completing a Report of Work Activity. The form includes the statement: "I understand that if the work as I describe establishes that I am able to engage in substantial gainful work activity, I will be found not disabled and my benefits will be suspended." Tr. 33. Plaintiff again reported he had been working at the VA Medical Center as a resident since June 1995 and that his earnings were an annual salary of approximately $32,000. But, inconsistently,

Plaintiff checked "no" on question 6, which asked if there had been months in which his earnings were more than $200 (which would indicate substantial gainful activity under the regulations in effect at that time). Plaintiff wrote in a space beside the box that he had started his residence program. Plaintiff also reported that his doctor had told him he could go back to work and that he was "physically and mentally in good shape" and worked "very hard" with "no limits." In a remarks section of the form, Plaintiff set forth how he had overcome his disabilities, completed medical school, enrolled in a residency program and hoped to be a certified M.D. soon. He thanked the agency for its support. Tr. 33-36. The agency nonetheless continued to send Plaintiff monthly benefits checks.

The agency wrote Plaintiff in March 1998 and said it was checking to see if Plaintiff remained eligible for benefits because several thousand dollars in earnings had been reported to his record for 1996 from the VA and Community Medical Center. The agency asked what that money represented. Tr. 27. Plaintiff responded with a Report of Work Activity that again contained the statement that he understood his benefits would be suspended if he reported work that amounted to substantial gainful activity. Plaintiff again reported that he was able to work, but this time he checked "no" when asked if his doctor had said he could go back to work. In the remarks portion of the form, he set forth the time he had spent in the residency program and his salary earned during that time. He also wrote that when he started the program in June 1995 he called Social Security about the situation. Despite the admitted

earnings of approximately $30,000 per year, Plaintiff again checked "no" on box six when asked if there had been months in which his earnings were more than $200. Tr. 29-32.

A few months later, in June 1998, the agency asked Hazelton General Hospital to provide information about earnings Plaintiff may have received from that hospital. The hospital reported significant wages earned during several months in 1997. Tr. 37. The following month, the agency asked the VA to report Plaintiff's earnings from 1995 through 1999. Significant earnings were reported for most months since Plaintiff had begun the residency program in June of 1995. Tr. 39-41.

Plaintiff delivered a form to the agency on July 20, 1999 in which he certified: "My earnings from 1995 through 06/30/99, when I graduated from medical school, were incentives due to my excellence in medical school." Plaintiff added that he would begin working in August 1999 at the VA Medical Center in Shreveport as a medical doctor practicing internal medicine. Tr. 44-45. The agency contacted the VA Hospital, which advised that Plaintiff was paid a salary, not a work incentive. Tr. 42 & 48 (indicating the agency received that information from the VA in November 1999).

The agency notified Plaintiff that his benefit payments would be stopped as of July 1999 because the agency had learned that Plaintiff returned to work. Tr. 46. The agency later advised Plaintiff of its decision that he was not entitled to benefits for June 1996 through April 1998, and beginning June 1998. The agency demanded repayment of the overpaid amount, which exceeded $25,000. Tr. 59-63.

Plaintiff appealed, and the ALJ held a hearing. Plaintiff testified that he was originally from Egypt, came to the United States in 1985 and acquired citizenship in 1991. He applied for and obtained disability benefits while living in California. He moved to Pennsylvania when he began his residency. Plaintiff testified that he called a social security office before he began his residency and told them he was about to start the program, gave them the name and address of the hospital, and told them how much his contract was for. Tr. 132-33. Plaintiff testified that he periodically completed the work activity reports the agency sent him. When he completed his residency program, he notified the agency that he was moving to Shreveport. Tr. 134. Plaintiff said he did not recall the agency telling him anything about the trial work period or any restrictions on working. Tr. 136.

Waiver of recovery of an overpayment is granted only where an individual is "without fault" in causing the overpayment *and* where recovery of the overpayment would defeat the purpose of the Act or be against equity or good conscience. 42 U.S.C. § 404(b). The claimant has the burden of proof that he was without fault. Bray v. Bowen, 854 F.2d 685, 687 (5th Cir. 1988).

Even if the agency "may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. The agency will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational or linguistic limitations (including any lack of facility with the English language). Id.

An individual is not without fault for an overpayment resulting from:

a. An incorrect statement made by the individual which he knew or should have known to be incorrect; or

b. Failure to furnish information which he knew or should have known to be material; or

c. With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

§ 404.507; Bray, supra.

The ALJ found that Plaintiff was "well educated and quite literate." He found that Plaintiff "accepted payments that he knew or should have known were not due" and did not exercise the care and responsibility expected of a beneficiary. The ALJ stated that a "major part" of what persuaded him was Plaintiff's own testimony that he continued to notify the agency that he had begun his residency as a physician. To be fair, however, that evidence of honest reporting to the agency could also weigh in Plaintiff's favor. Perhaps the ALJ intended to convey that it was wholly unreasonable for a person who was repeatedly admitting that he was no longer disabled and was working and earning a significant amount of salary to claim that he believed he was nonetheless entitled to continuing disability benefits.

Reasonable minds might have reached a different conclusion, but there is substantial evidence in this record to support the ALJ's decision. There are Plaintiff's significant earnings and admission that he was no longer disabled, his curious answers to question 6 on

some of the forms, and his attempt to incorrectly characterize his medical resident salary as a form of student incentive (in an apparent effort to keep the earnings from disqualifying him from eligibility). Plaintiff's testimony and written material in the record indicate that he is more than adequately proficient in English and should have easily understood the forms he completed and the basic concept that he was not entitled to continue receiving benefits if he was both not disabled and working and receiving a handsome salary.

There is substantial evidence to support the ALJ's finding that Plaintiff accepted payment that he knew or could have been expected to know was incorrect. The agency was remiss in not terminating benefits earlier, but the agency's shared fault does not entitle Plaintiff to a windfall by relieving him of his obligation to return payments to which he had no legal entitlement.[1] Accordingly, a judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 30th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff lists as an issue on appeal that there was an error in finding that he was overpaid, but Plaintiff has abandoned the issue by offering no supporting argument. Plaintiff also argues that the agency should have realized early on that it was paying him amounts to which he was not entitled.